David RAMBEAU et al.,
Plaintiffs-Appellants,

v.

James DOW et al., Defendants-Appellees.

No. 76–1876.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 15, 1977.

Decided April 19, 1977.

George F. Galland, Jr., Charles J. Barnhill, Jr., Chicago, Ill., for plaintiffs-appellants.

Samuel K. Skinner, U. S. Atty., Chicago, Ill., Edward P. Faberman, Federal Aviation Administration, Washington, D. C., for defendants-appellees.

Before FAIRCHILD, Chief Judge, and PELL and TONE, Circuit Judges.

PELL, Circuit Judge.

This is an appeal from the dismissal of the plaintiffs' action in the district court, 430 F.Supp. 301. Plaintiffs, who are air traffic controllers at O'Hare Airport, allege that the conditions of extreme stress under which they must work cause permanent damage to their health in violation of their rights. The rights assertedly violated under Count I were those guaranteed by the Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C. § 651 et seq. A second count realleging the same factual matters purported to rest upon a violation of the right not to be deprived of their jobs except for just cause by federal statutes and regulations, which deprivation allegedly was of due process of law. Defendants are officials of the Federal Aviation Administration (FAA) and the Civil Service Commission (CSC).

The gist of the plaintiffs' complaint is succinctly summarized in the district court's memorandum decision:

Plaintiffs contend that their working conditions impair their health and shorten their careers by a significant margin. Of the one hundred and twenty-five full time controllers currently working at O'Hare, one third have active permanent ulcers, and another third show symptoms of developing such ulcers before reaching the age of forty. FAA studies indicate that air traffic controllers at work experience more stress than military pilots flying in combat. The working conditions at the O'Hare tower are especially difficult because O'Hare is the world's busiest airport.

Plaintiffs sought a broad scope of relief from the federal courts as is evidenced by the prayer of the complaint which sought a permanent injunction against defendants generally from continuing to maintain the working conditions described in the complaint and specifically from requiring plaintiffs to work more than 32 hours in a work week (instead of a 40-hour work week) but without loss of pay; from continuing the present understaffing of controllers and the present inadequate training procedures; from continuing to engage in a haphazard introduction of inadequately tested procedures and machinery; and from continuing in force practices and procedures which preclude controllers from transferring to a facility of their choice after five years of duty at O'Hare. Affirmatively, additional compensation commensurate with the claimed extra workload was sought.

Plaintiffs alleged exhaustion of administrative remedies. Defendants moved to dismiss on the basis that the district court lacked jurisdiction of the subject matter of the case because, *inter alia*, plaintiffs had not exhausted available administrative remedies. The record, briefs and oral argument reflect that there were three disparate procedures which could have been pursued:

1. The FAA unilateral grievance procedure (Method 1)
2. Great Lakes Regional Unsafe and Unhealthful Working Conditions Report (Method 2)
3. Grievance procedure in the labor contract entered between the FAA and the Professional Air Traffic Controllers Organization, AFL–CIO (PATCO) (Method 3)

Plaintiffs assert that prior to filing their suit they had followed Method 1 thinking this was a proper method because the agency grievance procedure purported to cover their problem in that it stated that the subjects of grievance included working conditions and environment. The Chief of the Air Traffic Controllers Division denied the grievance stating that this was his "final decision in this matter." Among other reasons given for the denial were that the grievance involved either the content of agency policy or the interpretation and application of the PATCO agreement and that such matters were specifically excluded from grievance coverage. Further, the denial stated that the requested remedies for the most part were beyond the authority of the agency to implement.

The district court in granting the motion to dismiss apparently was of the opinion that the pursuit of Method 1 was an insufficient exhaustion of remedies in view of the fact that Method 2 was available. Method 2 by its terms had been promulgated in accordance with a requirement (pursuant to Executive Order 11807, Occupational Safety and Health Programs for Federal Employees and implementing guidelines issued by the Secretary of Labor as 29 Chap. XVII, Part 1960) that a formal system be provided whereby employees could report unsafe or unhealthful working conditions to the designated agency safety and health officer. The document containing Method 2 provided for a five-tier review procedure with final resort to the United States Department of Labor in the event of dissatisfaction with final agency disposition.

Before adverting further to the matter of Method 2, we consider briefly the matter of Method 3 pursuit of which apparently the district court did not deem to be necessary. The PATCO contract is a comprehensive labor agreement containing 56 articles covering, *inter alia*, numerous aspects of work-

ing conditions. Article 46 dealing with safety and health provided in Section 1 that the employer should abide by Executive Order 11612 concerned with occupational safety and health. Plaintiffs conceded during oral argument that if they had utilized the PATCO agreement grievance procedure it ultimately would have gone to final binding arbitration and if they had prevailed or gotten the relief they were seeking by this procedure, resort to the federal judiciary would have been unnecessary.

Plaintiffs' counsel indicated, however, *dehors* the record, that PATCO had pursued the matter of correcting the claimed unbearable working conditions for years without success. Indeed, among the numerous difficult questions which are implicit in this litigation is that of whether what the plaintiffs are seeking to do is to secure in federal court what they were unable to do by virtue of labor contract negotiations. The position of the defendants on Method 3 is less than clear. In the brief submitted in this court the defendants argue that by the failure of the plaintiffs to follow the PATCO grievance agreement procedure they had failed to exhaust the administrative remedy which they were required to utilize by virtue of the agency grievance procedure (Method 1). In oral argument at one point, the defendants' counsel seemed to say that if plaintiffs had exhausted Method 2 the Government defendants would not now contend that they also had to pursue Method 3. Subsequently, however, in argument the defendants stated that certain matters were matters properly to be considered in connection with the labor contract such as working hours, transfers, and equipment. The plaintiffs responded that all of these matters were factors entering into the creation of unbearably unsafe working conditions. At least for the present purposes ·we will accept the defense concession that if, as a matter of law, unsafe working conditions as alleged in the plaintiffs' complaint were a

basis for a private cause of action,* and the preliminary administrative procedures necessary for exhaustion before resort to a private cause of action had been exhausted, then plaintiffs would not be precluded from resorting to that private cause of action merely because some of the factors involved were also subject to relief under a labor contract grievance procedure. So, accepting that concession, we will, as did the district court, consider only Method 2 and the necessity for exhaustion thereof.

In this respect the plaintiffs asserted in their brief that they were not required to comply with Method 2 because the document setting forth that method did not physically reach O'Hare Airport until June 26, 1975, two days after plaintiffs had filed their complaint, and that it was only circulated to the controllers thereafter. We find no merit in this contention as the Great Lakes Regional Office had issued the order (Method 2) on June 13, 1975. The timing may have been unfortunate from the point of view of the plaintiffs but, as the district court properly in our opinion decided, the procedures which we have characterized as Method 2 were available before the plaintiffs brought the present action. We decline to equate availability of a remedy with knowledge of the existence of that remedy.

Plaintiffs contend in any event, however, on this appeal that subsequent to the district court's judgment and prior to the oral argument they had proceeded to follow Method 2 without any success and that the pursuit developed no more agency expertise nor any greater record from which the reviewing court could properly evaluate the technical questions than had the first abortive agency grievance procedure. The plaintiffs accordingly have moved to supplement the record by documentation of their claim that Method 2 has been exhausted. The defendants in oral argument indi-

---

* Counsel for the plaintiffs candidly conceded that he was unaware of any authority for a private cause of action under OSHA which would be available to the plaintiffs. The defendants' counsel did not supply any authority, however, to the contrary. Because the issue is not before us we express no opinion except that the issue may not be an easy one of resolution.

cated that they did not believe that Method 2 has been exhausted but we need not decide that issue. Inasmuch as a final judgment was entered in the district court, we can find no place in the present appeal for this subsequent development. Accordingly, the motion to supplement the record which was taken with the case is now denied.

■ As developed during oral argument the remedies which plaintiffs seek here, assuming arguendo that they all ultimately are founded upon a federally cognizable claim of unsafe working conditions, would involve the court in matters not ordinarily within its province such as budgetary matters and statutory matters, e. g., the establishment of the work week for Government employees of 40 hours, 5 U.S.C. § 6101(a)(2)(A). Irrespective of the difficulty or complexity of the problems potentially lurking in the bringing into being of the case which the plaintiffs seek to establish, what is before us now is whether the failure to pursue the available Method 2 was a sufficient basis for the district court to dismiss the action. Our holding is that it was, basically for the reasons advanced by the district court. It may well be that upon the filing of a subsequent suit in which plaintiffs allege that they have exhausted administrative remedies and in which they make the Secretary of Labor a party, as the defendants contend they must do, that no better record will be established for the district court and no administrative expertise will be reflected in what comes before the district court. This possibility, however, in our mind gives us no basis to disagree with the requirement that before going into federal court the plaintiffs should have exhausted the procedures which we have by way of shorthand referred to as Method 2, which were specifically devised as a "formal system whereby employees can report unsafe or unhealthful working conditions to the designated agency safety and health official."

■ In any event, we are satisfied that the district court did not err in dismissing the complaint. Inasmuch as the court was unable to reach the merits, however, the order should be modified to make it without prejudice. By that modification we, of course, imply no opinion as to whether, assuming there had been exhaustion, the complaint states a claim on which relief could be granted, for we are likewise unable to reach the merits.

AFFIRMED AS MODIFIED.